1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8   MIHAIL PETROV,                           CASE NO. C25-2647-KKE

9              Petitioner(s),                ORDER GRANTING PETITION FOR
        v.                                   WRIT OF HABEAS CORPUS
10
    LAURA HERMOSILLO, et al.,
11
               Respondent(s).
12

13         Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, asserting that

14   his arrest and re-detention during an appointment with United States Immigration and Customs

15   Enforcement ("ICE") agents violated his right to due process.  Dkt. No. 1.  Petitioner also filed a

16   motion for temporary restraining order ("TRO") (Dkt. No. 2), which the Court granted, prohibiting

17   the Government[1] from transferring Petitioner from the Northwest ICE Processing Center.  Dkt.

    Nos. 8, 12.
18
           The briefing on Petitioner's habeas petition is now complete.  Dkt. Nos. 1, 9, 13.  Because
19
    the Court finds that Petitioner has established that his re-detention without a hearing violates his
20
    rights to due process, the Court will grant the habeas petition.
21

22

23   _____
     [1] In this order, the Court refers to the federal Respondents—ICE's Seattle Field Office Director Laura Hermosillo,
24   U.S. Department of Homeland Security ("DHS") Secretary Kristi Noem, U.S. Attorney General Pamela Bondi, and
     DHS—as "the Government."

1

## I.    BACKGROUND

2

Petitioner is a native of Moldova who arrived in the United States with his family to seek

3

asylum in November 2023.  Dkt. No. 1 ¶ 1.  He entered without inspection, or being admitted or

4

paroled, and after a brief detention, United States Customs and Border Protection released

5

Petitioner on an order of recognizance, subject to reporting conditions.  Dkt. No. 10 ¶¶ 7–8.

6

Petitioner was enrolled in an Intensive Supervision Appearance Program ("ISAP") that required

7

regular remote check-ins as well as in-person check-ins.  Dkt. No. 1 ¶ 3.

8

Petitioner was initially processed for expedited removal, but Petitioner claimed fear of

9

returning to Moldova, Romania, and France.  Dkt. No. 10 ¶ 7.  Petitioner had a "credible fear"

10

interview with United States Citizenship and Immigration Services, and USCIS found that

11

Petitioner's fear was not credible. *Id.* ¶¶ 8–9.  Petitioner requested review of the fear determination

12

by an immigration judge, who vacated the USCIS determination and found that Petitioner's fear

13

was credible.  Dkt. No. 11-1.  DHS thereafter initiated standard removal proceedings, and

14

Petitioner subsequently filed an asylum application.  Dkt. No. 10 ¶¶ 10–11.  That application

15

remains pending. *Id.* ¶ 11.

16

When Petitioner arrived at a check-in appointment on December 11, 2025, Petitioner was

17

arrested—ostensibly due to ISAP violations—and is currently detained at the Northwest ICE

18

Processing Center.  Dkt. No. 10 ¶¶ 13–14.  On December 22, 2025, Petitioner filed a habeas

19

petition.  Dkt. No. 1.

20

For the following reasons, the Court finds that the Government's arrest and re-detention of

21

Petitioner without notice of the ISAP violations or an opportunity to be heard on them violates his

22

constitutional right to due process.  Accordingly, the Court will grant the habeas petition.

23

24

## II.     ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  In this case, Petitioner contends that his re-detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]"  U.S. CONST. AMEND. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context."  53 F.4th 1189, 1206–07 (9th Cir. 2022).  District courts have applied the *Mathews* test in similar circumstances since then.  *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

1    Although the Government does not address the *Mathews* test in its return (Dkt. No. 9), the

2    Court will apply each *Mathews* factor in turn to determine whether Petitioner's arrest and re-

3    detention without notice or a hearing comports with constitutional due process requirements.

4    **A.    Petitioner Has a Protected Interest in His Liberty.**

5         Petitioner's interest in not being detained is "the most elemental of liberty interests[.]"

6    *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  That Petitioner was arrested and remains in custody

7    weeks later undoubtedly presents a deprivation of Petitioner's interest in his liberty.

8         The Government does not explicitly dispute that Petitioner has a protected liberty interest

9    in his freedom.  The Government's return does state, without particularized analysis, that Petitioner

10   falls within the mandatory detention scheme under 8 U.S.C. § 1225(b) (Dkt. No. 9 at 6–8), but

11   Petitioner's status as a person who has been living and working in this country for two years

12   counsels against this expanded view of the Immigration and Nationality Act as amended.  *See,*

13   *e.g.*, *Escobar Salgado v. Mattos*, __ F. Supp. 3d __, 2025 WL 3205356, at *20 (D. Nev. Nov. 17,

14   2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant

15   due process rights as individuals present in the U.S., with no consideration of their deep financial,

16   community, and familial ties in the country, the government has proffered an interpretation of a

17   federal statute that engenders constitutional issues." (citation modified)).  "The overwhelming

18   majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory

19   detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who

20   has resided in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP,

21   2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases).  The Government's

22   interpretation of § 1225(b) is unpersuasive when the statutory scheme is read as a whole, when

23   this subsection is read in conjunction with its implementing regulations, and when the subsection

24

is read against the backdrop of shifting agency pronouncements.  *See, e.g.*, *Llanes Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at *6–8 (N.D. Cal. Dec. 18, 2025).

Under the circumstances of this case, the Court finds that Petitioner's interest in his liberty is constitutionally protected.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").  Accordingly, the first *Mathews* factor favors Petitioner.

**B.    The Risk of Erroneous Deprivation of Liberty is High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest in the absence of a pre-detention hearing.

As described earlier in this order, Petitioner was arrested during a check-in appointment based on alleged ISAP violations that occurred months earlier.  *See* Dkt. No. 10 ¶ 12.  The only "evidence" of the revocation or the violations the Government submits is the declaration of a deportation officer summarizing "records" he reviewed.  *Id.*  The officer did not attach any records to the declaration, nor is any record system identified specifically.  *Id.*  Petitioner denies the existence of these violations, and notes that his ISAP app has been disabled since his arrest, such that he cannot offer evidence to the Court to rebut the allegations against him.  Dkt. No. 13 at 2–3.

The factual basis for Petitioner's arrest and detention should be resolved at a pre-deprivation hearing, rather than resolved after the fact by this Court.  *See, e.g.*, *Rodriguez Diaz v. Kaiser*, No. 25-cv-05071-TLT, 2025 WL 3011852, at *10 (N.D. Cal. Sep. 16, 2025) (explaining that factual disputes as to violations of release conditions "must be adjudicated at a pre-deprivation hearing and they do not extinguish the liberty interest that grew when Respondents 'permitted

[Petitioner-Plaintiff] to develop an out-of-custody life in the United States' over the past five years" (quoting *Pinchi*, 792 F. Supp. 3d at 1034 n.5)).  Petitioner's rebuttal of the Government's violation allegations should not be resolved, in the first instance, in this litigation.  That Petitioner persuasively disputes the Government's allegations in his traverse, and the Government provided minimal support for the existence of those violations along with its return, only highlights the magnitude of the risk of erroneous deprivation of Petitioner's liberty interest.

Under these circumstances, the Court finds that the second *Mathews* factor favors Petitioner.

## C.    The Government Interest in Civil Detention Without a Hearing Is Low.

In the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without a hearing.

The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is "minimal": any administrative or financial burdens in providing Petitioner a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.  *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").  That Petitioner's alleged violations occurred months before they were acted upon, and Petitioner has had multiple appointments and conversations with ICE where any alleged violations could have been addressed but were not, undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable.  The third *Mathews* factor therefore favors Petitioner.

Based on this review of the *Mathews* factors, the Court finds that the Petitioner's liberty interest in his continuing release from custody is entitled to constitutional protections of due

process, and that having received no process related to his re-detention, Petitioner's constitutional rights have been violated.

### III.    REMEDY

Having determined that Petitioner's re-detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."). Furthermore, as explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be re-detained for alleged release violations.[2] *See, e.g.*, *Llanes Tellez*, 2025 WL 3677937, at *9 ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At any future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

---

[2] The habeas petition contends that the Government should be required to prove no alternative to detention could mitigate the risk of flight or danger to the community. Dkt. No. 1 at 10. The Government disputes the propriety of this request (Dkt. No. 9 at 8–10), and the traverse abandons any reference to it (Dkt. No. 13). As the petition cites no authority to support requiring the Government to demonstrate no alternatives to detention, and the Court is not aware of any such authority, the Court rejects that portion of the petition.

# IV.    CONCLUSION

For these reasons, the Court GRANTS Petitioner's petition for a writ of habeas corpus. Dkt. No. 1.   The Government is ORDERED to immediately release Petitioner from custody, subject to the same conditions that governed his release prior to his detention in December 2025. The Government may not re-detain Petitioner until after a hearing with adequate notice on his alleged release violations before a neutral decisionmaker.

The Government shall file a declaration within **48 HOURS** of the issuance of this order, confirming that Petitioner has been released as ordered herein.

Dated this 14th day of January, 2026.

Kymberly K. Evanson
United States District Judge